1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE MARIE FLEMMING, | Case No.  1:21-cv-00267-SKO |
| Plaintiff, | |
| v. | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | (Doc. 1) |
| Defendant. | |
| _____/ | |

## I.    INTRODUCTION

On February 25, 2021, Plaintiff Rose Marie Flemming ("Plaintiff") filed a complaint under U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 7, 9.)

## II.    BACKGROUND

Plaintiff protectively filed applications for DIB and SSI payments on April 2, 2018, alleging that she became disabled on December 30, 2015, due to post-traumatic stress disorder ("PTSD"), bipolar disorder, tachycardia, and high blood pressure.  (Administrative Record ("AR") 13, 300.) Plaintiff was born on December 22, 1969, and was 46 years old as of the alleged onset date.  (AR 24, 308.).  She completed two years of college and has past work experience as a medical billing clerk, cashier, and "pull driller."  (AR 301.)

### A.    Relevant Medical Evidence[2]

#### 1.    Porterville Adult Clinic

On July 24, 2018, Plaintiff had an appointment with her psychiatrist, Diane Wallace Kecskes, M.D.  (AR 652.)  Plaintiff reported that she had been much less anxious since taking Ativan and thought that her medications were helping.  (AR 652–53.)

On October 16, 2018, Plaintiff presented for therapy with Cheryl Ann Weldon, LMFT.  (AR 842.)  Plaintiff stated that she had applied for a job at the welfare office.  (*Id.*)  LMFT Weldon noted that Plaintiff appeared happy and energetic, also making similar notations for appointments on November 13, 2018, and December 18, 2018.  (824, 834, 842.)

On February 19, 2019, Plaintiff reported to Dr. Kecskes that she had improved mood, less moodiness, and fewer mood swings since taking Lamictal.  (AR 885.)

On March 19, 2019, Plaintiff presented for a scheduled psychiatric-medication-monitoring-and-review visit.  (AR 880.)  Dr. Kecskes noted that Plaintiff presented as calm.  (*Id.*)  Plaintiff reported that Lamictal had reduced her mood swings and she felt much better.  (*Id.*)

On April 16, 2019, Plaintiff told LMFT Weldon during their session that she had worked for one day as a cab driver, which went "okay."  (AR 792.)

On April 23, 2019, at a routine medication appointment with Dr. Kecskes, Plaintiff was noted to be polite and cooperative.  (AR 788.)  Plaintiff reported taking her psychotropic medications as prescribed.  (*Id.*)

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

1    On September 3, 2019, Plaintiff told LMFT Weldon that she had gone to Washington with

2  her mother and the trip went well overall.  (AR 756.)

3    On October 2, 2019, and November 5, 2019, Thomas William Haspel, M.D., Plaintiff's

4  psychiatrist, recorded that Plaintiff was responding well to increased dosages of Lamictal.  (AR 864,

5  868, 870.)

6    On October 15, 2019, and November 5, 2019, Plaintiff presented to therapy with LMFT

7  Weldon, who noted that Plaintiff was happy and displaying high energy.  (AR 738, 744.)

8                    **2.    Family Healthcare Network Porterville**

9    On January 13, 2020, Plaintiff presented to Areli Martinez, a nurse practitioner ("NP") to

10  establish care.  (AR 922.)   Upon examination, Plaintiff was found to be alert, oriented, and

11  cooperative, with intact cognitive function and good insight and judgment.  (*Id.*)

12                 **3.    Prior Administrative Medical Findings ("PAMF")[3]**

13    In June 2018, state agency consultants D. Haaland M.D., and J. Collado, M.D., reviewed

14  Plaintiff's medical history at the initial consideration level and assessed Plaintiff's residual

15  functional capacity ("RFC")[4].  (AR 115–32, 133–49.)  With regard to Plaintiff's physical RFC, Dr.

16  Haaland opined that Plaintiff was capable of medium exertional work with no climbing of ladders,

17  ropes, and scaffolds.  (AR 126–27, 144–45.)  Dr. Haaland further opined that Plaintiff should avoid

18  concentrated exposure to noise and all exposure to hazards, such as machinery and heights.  (AR

19  127.)  As for Plaintiff's mental RFC, Dr. Collado opined that Plaintiff was markedly limited in her

20  ability to interact appropriately with the general public and get along with coworkers or peers

21  without districting them or exhibiting behavioral extremes; and moderately limited in her ability to

22  understand and remember detailed instructions, carry out detailed instructions, and work in

23

24   [3] According to the revised regulations, for claims filed on or after March 27, 2017, the terms "prior administrative
   medical finding" or "PAMF" refer to the findings made by state agency medical and psychological consultants who
25   review claims at the initial and reconsideration levels.  *See* 20 C.F.R. § 416.913(a)(5).
      [4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work
26   setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  Social
   Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an
27   individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC,
   an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the
28   effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins
   v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

coordination with or in proximity to others without being distracted by them.  (AR 128–29, 146–47.)  According to Dr. Collado, Plaintiff was otherwise not significantly limited.  (*Id.*)

In September 2018, state agency consultants C. Bullard, M.D., and G. Ikawa, M.D., reviewed the medical records at the reconsideration level.  (AR 153–72, 173–92.)  Drs. Bullard and Ikawa agreed with Drs. Haaland's and Collado's findings, respectively.  (*See* AR 166–69, 186–89.)

**B.    Adult Function Reports**

**1.  Plaintiff's Statement**

On May 10, 2018, Plaintiff submitted an adult function report.  (AR 324–32.)  Plaintiff indicated that she does not drive.  (AR 327.)  She is able to go grocery shopping, but someone else has to drive her to the store.  (*Id.*)  Plaintiff also indicated that she does not spend time with others either in person, over the phone, or on the computer.  (AR 328.)

**2.  Plaintiff's Boyfriend's Statement**

On May 10, 2018, Phillip Harlas, Plaintiff's boyfriend, submitted an adult function report on Plaintiff's behalf.  (AR 312–19.)  He indicated that Plaintiff talks to family and friends on the phone and through social media several times a week.  (AR 316.)

**C.    Administrative Proceedings**

The Commissioner initially denied Plaintiff's applications for SSI and DIB benefits on June 22, 2018, and again on reconsideration on September 12, 2018.  (AR 13, 197, 208.)  Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").  (AR 215.)  At the hearing on February 26, 2020, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 39–56.)

Plaintiff testified that she has PTSD, bipolar disorder, acute anxiety, and dissociative disorder.  (AR 42.)  She has been receiving counseling every week for the past three years.  (AR 40.)  She has also been seeing a psychiatrist, who prescribed her medications.  (AR 40.)  According to Plaintiff, she has the most difficulties due to her bipolar disorder.  (AR 42.)  Her condition seemed to be improving with medication.  (AR 43.)  Plaintiff indicated that her mental health has been "okay," although she had been suicidal and more depressed than usual the prior few weeks.  (AR 40.)

Plaintiff has been looking for work but found it difficult to do so with her depression and migraines. (AR 41, 47–48.) She does not feel stable enough to work and be effective at work because she experiences "intense" anxiety around people. (AR 43.) Plaintiff also has issues with anger management; recently, she threw things at home and yelled at her mother, with whom she lives. (AR 41, 43–44.) She has conflicts with her mother two to three times a week over "small issues that become very big." (AR 50.) Once when her mother made her angry, Plaintiff smashed a can against her head instead of throwing it at her mother. (AR 50.) Plaintiff indicated that her issues also manifest outside of the home as verbal altercations, mostly with people she does not know. (AR 44.) For example, when Plaintiff is grocery shopping and people are blocking the aisle, she gets angry and "mouth[s] off" about them being in the way. (AR 44.) Plaintiff also has problems with dissociating, usually when she under stress or depressed. (AR 45.) Her longest dissociative episode was four days. (AR 52–53.) To reduce stress in her life, Plaintiff has been isolating and trying to stay away from people. (AR 45.)

Plaintiff testified that she stopped working at her previous job as a medical biller because the boss was mean and would cause her to become upset. (AR 51.) She also had issues with a couple of other employees, though there were two that she got along with out of the staff of ten. (AR 51.) She did not have altercations with any of the employees other than the boss. (AR 52.)

### D.     The ALJ's Decision

In a decision dated April 14, 2020, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 13–25.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 16–25.) The ALJ noted that Plaintiff had previously filed prior applications for DIB and SSI payments, which had been denied by an ALJ on November 24, 2017. (AR 13.) As the previous decision was based on the same facts and issues, the ALJ was bound by the prior decision and would consider Plaintiff's claims from November 25, 2017, forward. (AR 13.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 25, 2017, the day after the prior decision (step one). (AR 16.) At step two, the ALJ found Plaintiff's following impairments to be severe: obesity; obstructive sleep apnea; major depressive disorder, recurrent and moderate with anxious stress; personality disorder with borderline

traits; bipolar disorder; PTSD; and degenerative disc disease of the lumbar spine.  (AR 16.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 17.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . .  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except she is unable to climb ladders, ropes, and scaffolds.  She must have no exposure to moving machinery and unprotected heights.  She would need a work setting with no louder than usual office noise levels.  She is limited to simple routine repetitive work tasks.  She is able to have occasional interaction with co-workers and supervisors, but no interaction with the general public.  Finally, she is unable to perform any tandem job tasks.

(AR 19.)[5]  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]"  (AR 21.)

The ALJ determined that, given her RFC, Plaintiff was not able to perform her past relevant work as a cabinet hole driller and medical billing clerk (step four).  (AR 23.)  The ALJ ultimately concluded that Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically office assistant, Dictionary of Occupational Titles ("DOT") code 239.567-010, mail room clerk, DOT code 209.687-026, and routing clerk, DOT code 222.587-038 (step five).  (AR 24–25.)

On June 15, 2020, Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on October 27, 2020.  (AR 4, 30.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

---

[5] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).  Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*

# III.     LEGAL STANDARDS

## A.     Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue [his] past work, the burden

1  shifts to the Commissioner in step five to show that the claimant can perform other substantial

2  gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

3          **B.      Scope of Review**

4          "This court may set aside the Commissioner's denial of [social security] benefits [only] when

5  the ALJ's findings are based on legal error or are not supported by substantial evidence in the record

6  as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such

7  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

8  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

9  U.S. 197, 229 (1938)).   "Substantial evidence is more than a mere scintilla but less than a

10  preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

11          "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.*

12  *Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ's decision denying benefits "will be disturbed

13  only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell*

14  *v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).   Additionally, "[t]he court will uphold the ALJ's

15  conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*,

16  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more

17  than one rational interpretation, the court may not substitute its judgment for that of the

18  Commissioner." (citations omitted)).

19          In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

20  of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

21  determine whether the Commissioner applied the proper legal standards and whether substantial

22  evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d

23  909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply

24  by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa*

25  *v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).   "Rather, a court must 'consider the record as a

26  whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's]

27  conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

28          Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and that the ALJ erroneously discounted Plaintiff's subjective complaints.  (Doc. 16 at 9.)  Alternatively, Plaintiff contends that the RFC is not supported by substantial evidence, as the ALJ erred by failing to develop the record and obtain an assessment of Plaintiff's limitations from a treating or examining source.  (*Id.*)  For the reasons stated below, the Court finds that the ALJ did not err.

### A.    The ALJ's Evaluation of Plaintiff's Testimony

#### 1.    Legal Standard

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Id.*  The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation
> for lying, prior inconsistent statements concerning the symptoms, and other

1
2

> testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

3  *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v.*

4  *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may

5  consider include a claimant's work record and testimony from physicians and third parties

6  concerning the nature, severity, and effect of the symptoms of which she complains.  *Light v. Social*

7  *Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

8      The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

9  demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir.

10  2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General

11  findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not

12  credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d

13  1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

14                    **2.    Analysis**

15      Plaintiff contends that the ALJ erred by failing to include limitations in the RFC consistent

16  with Plaintiff's anger and outbursts.  (Doc. 16 at 10–11.)  The ALJ found that Plaintiff's "medically

17  determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 21.)

18  The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting

19  effects of these symptoms are not entirely consistent with the medical evidence and other evidence

20  in the record for the reasons explained in this decision."  (AR 21.)  Since the ALJ found Plaintiff's

21  "medically determinable impairments could reasonably be expected to cause the alleged

22  symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing

23  reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.

24      As an initial matter, it appears to the Court that the ALJ accepted, at least in significant

25  measure, Plaintiff's testimony regarding her ability to interact with others.  Plaintiff testified that

26  she had anger management issues that manifested outside the home as verbal altercations, mostly

27  with people she does not know.  (AR 44.)  She further testified that, at her previous job, Plaintiff

28  did not get along with the boss and a few other employees, though there were two that she got along

with out of the staff of ten.  (AR 51.)  She, however, did not have altercations with any of the employees other than the boss.  (AR 52.)  In her opinion, the ALJ acknowledged this testimony, and the RFC ultimately limited Plaintiff to occasional interaction with co-workers and supervisors and no interaction with the general public.  Thus, the Court finds that the ALJ's RFC assessment properly took into account Plaintiff's testimony regarding her anger issues and outbursts.

To the extent Plaintiff contends that her subjective complaints supported a more restrictive limitations (i.e., no interaction with supervisors or coworkers) (*see* Doc. 16 at 10–11), the Court finds that the ALJ offered "clear and convincing" reasons, supported by substantial evidence, to discount Plaintiff's credibility.  Here, the ALJ properly determined that Plaintiff's credibility was undermined by: (1) Plaintiff's prior statements that were inconsistent with her hearing testimony; (2) Plaintiff's daily activities; and (3) the objective medical evidence.  (AR 52–53.)

First, the ALJ determined that Plaintiff's statements regarding her subjective complaints conflicted with her boyfriend's statements and her own prior statements.  (AR 22.)  When evaluating credibility, an ALJ may consider "inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct." *Thomas v. Barnhart*, 278 F.3d 947, 958–959 (9th Cir. 2002) (citation and internal quotation marks omitted; alterations in the original); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (an ALJ's credibility finding may be based upon "ordinary techniques" of credibility evaluation, including inconsistent statements).  Specifically, the ALJ noted (AR 22) that Plaintiff reported in her adult function report that she does not drive (AR 327), but at the hearing, Plaintiff testified that she had driven herself there (AR 47).  Plaintiff also reported that she does not spend time with others (AR 328), but her boyfriend indicated that Plaintiff talks to family and friends on the phone and through social media several times a week (AR 316).  Therefore, considering Plaintiff's conflicting statements, the ALJ reasonably concluded that Plaintiff's testimony was not fully credible. *See Alonzo v. Colvin*, No. 1:14-cv-00460-SKO, 2015 WL 5358151, at *17 (E.D. Cal. Sept. 11, 2015) (finding that one inconsistent statement "comprised a clear and convincing reason to discount a claimant's credibility").

Next, the ALJ found that Plaintiff's activities indicated that her impairments were not as severe as she reported them to be.  (AR 22.)  A claimant's daily activities can be probative to

determine the severity of his or her mental impairments.  *See Taylor v. Astrue*, 386 F. App'x 629, 632 (9th Cir. 2010).  Even where a claimant's activities suggest difficulty in functioning, an ALJ may give less weight to subjective complaints to the extent a claimant's apparent actual level of activity is inconsistent with the extent of functional limitation the claimant has alleged.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ may consider daily activities to extent plaintiff's "level of activity [is] inconsistent with [the] . . . claimed limitations").  As the ALJ explained (AR 22), the evidence in the record shows that Plaintiff was able to travel to Washington with her mother to visit family, go grocery shopping with her mother, and talk to friends and family on the phone and through social media several times a week.  (AR 49, 316, 327, 756.)  Plaintiff also reported working for one day as a cab driver, which went "okay," as well as applying for a job at the welfare office and interviewing for other jobs.  (AR 43, 792, 842, 885.)  The Court finds that Plaintiff's activities were reasonably considered by the ALJ to be inconsistent with Plaintiff's alleged inability to work due to her anxiety being around other people (*see* AR 43).  Accordingly, the inconsistency between Plaintiff's activity level and her complaints was a clear and convincing reason to find her testimony not credible.  *See* 20 C.F.R. § 416.929(c)(3); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).

Lastly, the ALJ found that Plaintiff's testimony was inconsistent with the objective medical evidence.  (AR 21–22.)  "[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'"  *Ondracek v. Comm'r of Soc. Sec.*, No. 1:15-cv-01308-SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*, 400 F.3d at 680).  However, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others."  *Salas v. Colvin*, No. 1:13-cv-00429-BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

The ALJ cited numerous treatment notes that reflected improvement in Plaintiff's mental health conditions as more time passed and as Plaintiff consistently took her psychotropic

medication.  (AR 21–22.)  *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for [disability] benefits.").  Specifically, Plaintiff reported she was much less anxious and her mood swings were reduced.  (*See, e.g.*, AR 652–53, 864, 868, 870, 880.)  At counseling sessions, Plaintiff was found to be happy, energetic, polite, and cooperative.  (AR 738, 744, 788, 824, 834.)  Thus, the Court finds that the ALJ properly considered inconsistency with the objective evidence as one of several "clear and convincing" reasons to discount Plaintiff's credibility.  *See Salas*, 2014 WL 4186555, at *6.

In sum, the Court finds that ALJ proffered several reasons sufficient to discredit Plaintiff's subjective complaints regarding the extent of her limitations, and therefore, the ALJ did not err. Plaintiff has not challenged any of the reasons identified by the ALJ for discrediting her testimony, and instead contends that the record as a whole is consistent with her subjective complaints.  (*See* Doc. 16 at 9–12.)  The Court, however, will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff.  *See Molina*, 674 F.3d at 1110.

### B.   The ALJ Had No Duty to Develop the Record

Alternatively, Plaintiff contends that, in failing to obtain an assessment of Plaintiff's mental limitations from a treating or examining physician, the ALJ failed to carry her duty to develop the record.  (Doc. 16 at 12–16.)  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation.  To the contrary, when the ALJ asked the Plaintiff's attorney at the hearing whether the record was complete, he responded "Yes."  (AR 38.)  *See Findley v. Saul*, No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding the ALJ was not obligated to further develop the record where counsel stated at the hearing that the record was complete).  *See also Randolph v. Saul*, 2:18-cv-00555-CLB, 2020 WL 504667, at *8 (D. Nev. Jan. 31, 2020) (same).

The ALJ summarized medical evidence spanning 2017 through 2020 and found with the

support of that record that Plaintiff had not established she was disabled.  (AR 21–22.)  The record

contained what appears to be Plaintiff's complete treatment records that supported the ALJ's

findings and did not present an ambiguity or inadequacy.  Notably, Plaintiff failed to submit any

medical opinions from a treating or examining physician that support her claimed functional

limitations.  Because it is Plaintiff's burden to present evidence of disability, the mere absence of a

report from a treating or examining physician does not give rise to a duty to develop the record;

instead, that duty is triggered only where there is an inadequacy or ambiguity.  *Bayliss v. Barnhart*,

427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL

2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did

not give rise to a duty to develop the record where record contained opinions of the state agency

physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An

individual shall not be considered to be under a disability unless [they] furnish[ ] such medical and

other evidence of the existence thereof as the Commissioner of Social Security may require."); 20

C.F.R. § 416.920(a) ("[Y]ou have to prove to us that you are . . . disabled[.]").

Contrary to Plaintiff's assertion (Doc. 16 at 13–14), an updated opinion is not required

simply because additional medical evidence is received after the state agency physicians had already

reviewed Plaintiff's records.  *See de Hoog v. Comm'r of Soc. Sec.*, No. 2:13-CV-0235-KJN, 2014

WL 3687499, at *7 (E.D. Cal. July 23, 2014).  Such an occurrence is quite common.  *See id.*

(explaining that "[i]n virtually every case further evidence is received after the state agency

physicians render their assessments—sometimes additional evidence and records are even received

after the ALJ hearing.  For that very reason, the ALJ is tasked with considering the evidence in the

record as a whole.").

Plaintiff cites cases in which a duty to develop the record arose (*see* Doc. 16 at 13–14), but

these were limited to situations where the subsequent "objective evidence suggest[ed] a condition

that could have a material impact on the disability decision."  *Molina v. Berryhill*, No. 2:17-CV-

01991 CKD, 2018 WL 6421287, at *3 (E.D. Cal. Dec. 6, 2018).  *See also Escudero v. Comm'r of*

*Soc. Sec.*, No. 1:18-CV-01136-EPG, 2019 WL 4917634, at *2 (E.D. Cal. Oct. 4, 2019) (finding the

ALJ improperly failed to develop the record where descriptions of some of the medical evidence

post-dating the opining physicians' opinions was not "self-evident" and instead "appear[ed] to be very medical in nature and not susceptible to a lay understanding."); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (subsequent medical evidence giving rise to duty to develop the record documented "significant medical events relevant to plaintiff's physical condition.").

With regard to Plaintiff's mental impairments, the records that Plaintiff directs the Court to review, do not show a significant worsening of Plaintiff's condition, as she contends.  For example, Plaintiff cites to treatment notes from her psychiatrist and therapist, reflecting Plaintiff's continued mental health treatment for symptoms including anger, trauma, anxiety, depression, suicidal and homicidal ideations, isolation, and irritability.  (Doc. 16 at 14–15).  The ALJ assessed this evidence, noting that some the records documented improvement in Plaintiff's condition.  (*See* AR 21–22.)  For example, throughout 2019, Plaintiff was noted to be responding well to an increased dosage of her medication, with improved mood and sleep.  (AR 864, 868, 870, 880.)  Plaintiff herself reported feeling "much better."  (AR 880.)  During a physical examination in January 2020, Plaintiff was alert, oriented, and cooperative, with intact cognitive function and good judgment and insight.  (AR 922.)

As for her physical RFC, Plaintiff contends the ALJ was required to develop the record because the ALJ acknowledged that the state agency physicians did not consider her subsequent diagnosis of degenerative disc disease of the lumbar spine.  (Doc. 16 at 15–16; Doc. 19 at 2–3.)  But this diagnosis alone, without evidence of significant accompanying symptoms, was insufficient to trigger the ALJ's duty to further develop the record.  *See Morsea v. Berryhill*, 725 F. App'x 463, 465 (9th Cir. 2018) (the claimant's cancer diagnosis by itself did not require the ALJ to develop the record by obtaining the testimony of a medical expert) (citing *Waters v. Gardner*, 452 F.2d 855, 857 (9th Cir. 1971) ("The fact that a person is suffering from a diagnosed disease or ailment is not sufficient in the absence of proof of its disabling severity to warrant the award of benefits.") (citation omitted)).  "It must be borne in mind that a [p]laintiff must show not just a diagnosis, but functional limitations preventing performance of substantial gainful activity."  *Jones v. Colvin*, No. 2:12-CV-00135-MHW, 2013 WL 6000544, at *8 (E.D. Wash. Nov. 12, 2013).  As Plaintiff has not identified

1    any functional limitations due to her degenerative disc disease that have not already been accounted

2    for by the ALJ's RFC determination, the ALJ's duty to develop the record was not triggered.

3           For all of the reasons above, the Court finds that the ALJ did not err by failing to develop

4    the record by soliciting additional medical opinions to interpret new medical records.

5           **C.     The ALJ Did Not Err in Formulating Plaintiff's RFC**

6           An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the

7    relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence.

8    20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that

9    it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional

10   capacity.").  Further, an ALJ's RFC determination need not precisely reflect any particular medical

11   provider's assessment.  *See Turner v. Comm'r Soc. Sec. Admin*., 613 F.3d 1217, 1222-23 (9th Cir.

12   2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at

13   the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks

14   in an environment without public contact or background activity").

15          In criticizing the ALJ's failure to develop the record—which the Court has already

16   rejected—Plaintiff contends that the RFC was the result of the ALJ improperly imposing their own

17   lay interpretation of the medical evidence.  (*See* Doc. 16 at 14–16.)  This contention is unavailing.

18   The nature of the ALJ's responsibility is to interpret the evidence of record, including medical

19   evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Such a responsibility does not

20   result in the ALJ committing legal error when she assesses an RFC that is consistent with the record.

21   *See Mills v. Comm'r of Soc. Sec*., No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug.

22   22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a

23   whole, and thus the RFC need not exactly match the opinion or findings of any particular medical

24   source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

25          According to the record, the only expert medical opinions regarding Plaintiff's impairments

26   are those of the state agency physicians Drs. Haaland (AR 126–27, 144–45), Collado (AR 128–29,

27   146–47), Bullard (*See* AR 166–67, 186–87), and Ikawa (*See* AR 168–69, 188–89).  The ALJ

28   considered these persuasiveness of these opinions, as the ALJ is charged to do, finding Drs.

Collado's and Ikawa's opinions with regard to Plaintiff's mental limitations persuasive.[6]  (AR 23.)
The ALJ, however,  found Drs. Haaland's and Bullard's opinions to be unpersuasive and rejected a
limitation to "medium" exertional activity, finding instead that the treatment and imaging records
that post-dated the opinions supported a "light" exertional limitation.  (AR 23.)

    Having considered both the opinions of the state agency physicians and the objective medical
evidence of record, the ALJ formulated Plaintiff's RFC, which included a more restrictive limitation
to exertional activity than found by the opining physicians.[7]  *See Mills*, 2014 WL 4195012, at *4
(finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the
ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own
testimony in formulating an RFC.").  *See also* 20 C.F.R. § 404.1527(d)(2) ("the final responsibility
for deciding [RFC] is reserved to the Commissioner), § 404.1545(a)(1) ("We will assess your
residual functional capacity based on all the relevant evidence in your case record.").

    Plaintiff does not challenge the ALJ's evaluation of the state agency physicians' opinions,
nor does she specify any additional functional limitations that were not accounted for in the ALJ's
RFC assessment.  Nor does Plaintiff otherwise show any inconsistency between this evidence and
her RFC.  Instead, Plaintiff appears to be advocating for an alternative interpretation of the evidence
she cites in her briefing.  The Court, however, will not second guess the ALJ's reasonable
interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff.  *See
Molina*, 674 F.3d at 1110.

    In sum, the Court does not find error in the ALJ's reliance on the opinions of the state agency
physicians and finds that substantial evidence supports the ALJ's conclusions regarding the impact
of Plaintiff's impairments on the RFC.  Plaintiff may disagree with the RFC, but the Court must

---

[6] On January 18, 2017, the Social Security Administration published revisions to its regulations regarding the evaluation
of medical evidence.  *See* REVISIONS TO RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE,
82 Fed. Reg. 5844-01, 2017 WL 168819 (January 18, 2017).  For applications filed on or after March 27, 2017, like
Plaintiff's, the new regulations state an ALJ need "not defer or give any specific evidentiary weight, including
controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from
[Plaintiff's] medical sources."  20 C.F.R. § 404.1520c(a).  Instead, an ALJ is to evaluate opinions by considering their
"persuasiveness."  *Id.*
[7] The ALJ's RFC assessment is also based on consideration of the subjective complaint testimony, which, as set forth
more fully above, the ALJ properly discredited.

nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas*, 278 F.3d at 954.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Rose Marie Flemming.

IT IS SO ORDERED.

Dated:  **September 19, 2022**                    */s/ Sheila K. Oberto*
                                                            UNITED STATES MAGISTRATE JUDGE